884 P.2d 193

**Robert M. HART and Jane Doe Hart; Anthony W. Trifari and Jane Doe Trifari dba National Bakeries of Arizona, Inc., aka Napoli Bakery, Petitioners,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**No Insurance/Special Fund, Respondent Party in Interest,**

**Alex Kara, Respondent Employee.**

**No. 1 CA–IC 92–0189.**

Court of Appeals of Arizona, Division 1, Department C.

March 1, 1994.
Review Denied Nov. 29, 1994.

Jones, Skelton & Hochuli by Charles G. Rehling, III, Phoenix, for petitioners.

The Industrial Commission of Arizona by Anita R. Valainis, Chief Counsel, Phoenix, for respondent.

The Industrial Commission of Arizona, No Ins. Section/Special Fund Div. by Laura L. McGrory, Phoenix, for respondent Party In Interest.

Jerome, Gibson, Stewart, Friedman & Stevenson, P.C. by James L. Stevenson, Phoenix, for respondent Employee.

## OPINION

NOYES, Judge.

We are asked to set aside an Industrial Commission award that dismissed as untimely the request for hearing filed by Petitioners, an uninsured employer. Three questions are presented:

1. Is Arizona Revised Statutes ("A.R.S.") section 23–947(A), which limits an uninsured employer's protest period to thirty days, unconstitutional?

2. Were the notices of determination issued in this case so ambiguous and confusing that they denied the employer due process of law?

3. Did a notice of determination amending two prior notices of determination prevent the earlier notices from becoming final?

Concluding that the answer to each question is "No," we affirm the Commission's award.

### I.

On November 22, 1991, Alex Kara (Claimant) filed a workers' compensation claim

against "Napoli Bakery or National Bakery Co.," alleging that he had sustained an industrial back injury on October 26, 1991. The Industrial Commission could not locate workers' compensation coverage for "National Bakery," so it forwarded the claim to the No Insurance/Special Fund Division ("the Special Fund"). After investigating the claim, the Special Fund issued a Notice of Determination on January 15, 1992 (the January 15 Notice). This Notice accepted the claim for benefits and listed "National Bakeries of Arizona, Inc. dba Napoli Bakery" ("National") as the uninsured employer. The January 15 Notice was served upon Claimant, his attorney, National, and the corporation's statutory agent. On January 31, 1992, the Special Fund issued a Notice of Determination setting the Claimant's average monthly wage (the January 31 Notice).

On February 12, 1992, David Sosa ("Sosa"), a claims specialist for the Special Fund, received a telephone call from Robert M. Hart ("Hart"), National's owner. Hart acknowledged receipt of the January 15 Notice and he advised that Claimant was not employed by National. After Sosa explained the employer's thirty-day protest period,[1] Hart responded that he would request a hearing. On February 18, 1992, Hart filed an untimely letter protesting the Special Fund's determination ("the protest letter"). The protest letter, which was dated February 13, 1992, stated in part: "Alex Kara was not an employee of National Bakeries of Arizona, Inc. on the date of his claim, October 26, 1991. National Bakeries of Arizona, Inc. was not Incoppported [sic] until October 28, 1991 (Not DBA of Napoli or Great West Baking) [sic] this is not the proper party." Sosa sent Hart a letter acknowledging receipt of his protest and asking him to complete and return a Request for Hearing form. Hart returned the Request for Hearing form on March 4, 1992, but he left blank the parts of the form asking which Notice was being protested and why a hearing was being requested.

After investigating the corporate status of Claimant's employer, the Special Fund issued a Notice of Determination on March 6, 1992, correcting the January 15 and January 31 Notices to indicate the employer's name as "Robert M. Hart & Jane Doe Hart; Anthony W. Trifari & Jane Doe Trifari dba National Bakeries of Arizona, Inc. aka Napoli Bakery" ("the March 6 Notice"). On April 16, 1992, the Commission issued a Notice of Hearing. In a letter dated April 29, 1992, the administrative law judge ("ALJ") informed the parties that the sole hearing issue would be whether the untimeliness of the February 18 protest letter was legally excusable.

At the hearing, Hart testified that he believed the protest letter was timely because he thought he had thirty working days from the January 31 Notice to request a hearing. He also stated that when he returned the Request for Hearing form, he left most of it blank because he did not know what to put on it. Hart further claimed that he did not request a hearing after receiving the March 6 Notice because he felt his prior request was sufficient.

On cross-examination, Hart conceded that he had received the January 15 Notice, that he was aware he had thirty days to request a hearing, and that he had not done so. Contradicting his earlier testimony, Hart stated that when he mailed the protest letter, he assumed it would arrive by February 15, thirty days after the January 15 Notice. He also testified that although he read both the January 15 and January 31 Notices, they looked "identical." Hart further acknowledged that, despite receiving a letter from the Commission's chief counsel instructing him to request a hearing if he disagreed with the March 6 Notice, he never requested a hearing on the March 6 Notice. Hart also conceded that he was not incapacitated between January 15, 1992, and February 18, 1992, and that no one at the Commission misled him as to his right to request a hearing.[2]

---

1. Under A.R.S. § 23–947(A), an uninsured employer has thirty days from the date of determination in which to file a request for hearing. The request for hearing must be in the Commis- sion's possession by the thirtieth day. *See* A.R.S. § 23–947(B) (Supp.1993).

2. When asked, Hart could not recall speaking with Sosa. Sosa, however, did testify that he

Following the hearing, the ALJ entered an award dismissing Hart's protest as untimely without a legal excuse. Under A.R.S. § 23–947(B), an ALJ may excuse a late filing for any of three enumerated reasons. *See* A.R.S. § 23–947(B). In concluding that the lateness of the protest letter was not excusable under § 23–947(B), the ALJ in this case found, *inter alia,* that:

(1) Hart had filed the protest letter to contest the January 15 Notice's designation of Claimant's employer;

(2) the protest letter was late solely because Hart did not mail it in time for it to be received by the Commission in a timely manner;

(3) Hart's submission of the Request for Hearing form had no legal effect because the protest letter was already untimely;

(4) there was no justification for treating the protest letter as a protest of the January 31 Notice, which set Claimant's average monthly wage;

(5) Hart had received the March 6 Notice, but did not file a protest, timely or otherwise, to that notice; and,

(6) as a result of Hart's failure to protest the March 6 Notice, "all of the substantive merits which were reasonably within the scope of the [January 15 Notice] and the [March 6 Notice] ... [became] final because of the absence of an excusable or timely protest by the employer."

On appeal, Hart does not contend that the untimeliness of his protest letter is excused by any of the grounds set forth in A.R.S. § 23–947(B). Instead, he raises a number of constitutional arguments, discussed below. The award was summarily affirmed on administrative review, and Hart brought this special action. We have jurisdiction pursuant to A.R.S. §§ 23–951(A) (1983) and 12–120.21(A)(2) (1992).

## II.

### A.

■ Hart argues that A.R.S. § 23–947 [3] is unconstitutional because it denies him equal protection under the law by distinguishing between uninsured employers and all other interested parties, including insured employers. Under the statute, an uninsured employer must file a request for hearing within thirty days of the notice of determination, whereas all other interested parties are afforded a ninety-day protest period. *See* A.R.S. § 23–947(A). We find nothing unconstitutional about this distinction.

■ A statute that creates classifications will withstand an equal protection challenge if: (1) all persons within a class are treated alike, and (2) reasonable grounds for the classification exist. *See Findley v. Industrial Comm'n,* 135 Ariz. 273, 276, 660 P.2d 874, 877 (App.1983). This case is similar to *Findley,* wherein this Court upheld the constitutionality of A.R.S. § 23–1043.01(B), which provides a more stringent standard of proof for stress-related mental injuries. The claimant in *Findley* had argued that singling out industrial claimants with stress-related mental injuries violates the equal protection clause. *Id.* This Court found the statute constitutional because all members of the class, i.e., those with stress-related mental injuries, were treated equally by the statute, and the difficulty in proving a causal connection between mental injury and the work place provided a reasonable basis for the more stringent standard of proof. *Id.*

spoke with Hart on February 12, 1992, and advised him of the thirty-day protest period. According to Sosa, Hart responded that he had received the January 15 Notice and would request a hearing. Sosa also stated that Hart never mentioned the January 31 Notice.

**3.** The statute provides, in relevant part:

A hearing on any question relating to a claim shall not be granted unless the employee has previously filed an application for compensation within the time and in the manner prescribed by § 23–1061, and such request for a hearing is filed within ninety days after the notice sent under the provisions of § 23–1061, subsection F or within ninety days of notice of a determination by the commission, insurance carrier or self-insuring employer under § 23–1047 or 23–1061, except that an employer who is subject to and fails to comply with § 23–961 or 23–962 [workers' compensation coverage] must file a request for hearing within thirty days of notice of a determination by the commission, or within ten days of all other awards issued by the commission.

A.R.S. § 23–947(A) (Supp.1993).

The challenged statute, A.R.S. section 23–947(A), treats all uninsured employers alike, and there is a reasonable basis for giving uninsured employers a shorter protest period than insured employers. One reasonable basis for the disparate treatment is that Arizona law requires employers to carry workers' compensation insurance to protect their employees; uninsured employers are in violation of this law whereas insured employers are not. *See* A.R.S. §§ 23–932, –961 (Supp. 1993). Another reasonable basis for the disparate treatment is that claimants face added administrative delay in obtaining workers' compensation benefits when their employer is uninsured. When the employer is uninsured, the Special Fund must investigate both the status of the employer and the claim itself, and then give the uninsured employer the thirty-day protest period before the Special Fund can release benefits to the claimant. For these reasons, the A.R.S. section 23–947(A) thirty-day protest period for uninsured employers is constitutional.[4]

### B.

■ Hart also contends that the January 15, January 31, and March 6 Notices denied him due process of law because they "are hopelessly confusing and ambiguous to a lay person." We disagree. Each of the three notices of determination clearly indicated it was being issued for a different reason. The January 15 Notice stated that it accepted Claimant's workers' compensation claim for benefits. The January 31 Notice stated that it set Claimant's average monthly wage at $1191.58. The March 6 Notice stated that it was issued to correct the January 15 and January 31 Notices to reflect the employer's correct name. Each of these notices also contained the following language:

*NOTICE TO NON–INSURED EMPLOYER:* If you do not agree with this DETERMINATION and wish a hearing on the matter, your written Request for Hearing must be received at either office of the Industrial Commission listed below within THIRTY (30) DAYS after the date of mailing of this DETERMINATION pursuant to ARS Section 23–941 and 23–947. IF NO SUCH REQUEST IS RECEIVED WITHIN THAT THIRTY (30) DAY PERIOD, THIS DETERMINATION IS FINAL. The defendant employer is liable to the Special Fund for all benefits payable on claim.

After Hart received the January 15 Notice, Sosa told him that he had thirty days to file a hearing request. After Hart received the March 6 Notice, the Commission's chief counsel wrote him and called the hearing request period to his attention.

■ The elements of procedural due process are notice and an opportunity to be heard. *Iphaar v. Industrial Comm'n*, 171 Ariz. 423, 426, 831 P.2d 422, 425 (App.1992). The notices in this case did not deprive Hart of procedural due process.

### C.

■ Hart claims that the March 6 Notice prevented the January 15 and January 31 Notices from becoming final. We disagree. Each of these notices carried its own statutorily-mandated protest period. *See* A.R.S. § 23–947(A). Because Hart failed to file a timely hearing request for either the January 15 or the January 31 Notices, these notices had become final before the March 6 Notice issued. *See* A.R.S. § 23–947(B) ("Failure to file [a request for hearing] with the commission within the required time by a party

4. As support for his argument that the thirty-day protest period in section A.R.S. § 23–947 violates the equal protection clause, Hart cites *Gila Valley Block Co., Inc. v. Industrial Comm'n*, 120 Ariz. 264, 585 P.2d 572 (App.1978). His reliance on *Gila Valley* is misplaced, however, because equal protection was not an issue in that case. The only issue in *Gila Valley* was whether an Industrial Commission rule limiting insured employers to a thirty-day protest period was an unreasonable exercise of the Commission's rule-making authority. *See* 120 Ariz. at 264, 585 P.2d at 572. In holding the rule invalid, this Court found that the rule conflicted with A.R.S. section 23–947, which at that time provided a sixty-day protest period for *all* interested parties. *See id.* at 265, 585 P.2d at 573. We also find *Gila Valley* distinguishable from the present case because in 1987 the legislature amended A.R.S. section 23–947(A) specifically to limit uninsured employers to a thirty-day protest period instead of the ninety-day period that applies to other interested parties. *See* 1987 Ariz.Sess.Laws ch. 38, § 1.

means that the determination by the commission ... is final and res judicata to all parties."). The March 6 Notice did not affect the finality of the prior notices; it amended them by correcting the name of the employer. If Hart wished to protest the name of the employer as stated on the March 6 Notice, he had to file a protest within thirty days. When he did not do so, the March 6 Notice also became final. *See id.*

### III.

The March 6 Notice did not affect the finality of the January 15 Notice or the January 31 Notices. There was no protest, timely or otherwise, to the January 31 and March 6 Notices. The protest letter challenged only the January 15 Notice, and the ALJ did not err in dismissing that protest letter as being untimely filed without a statutory excuse. The award is affirmed.

TOCI, P.J., and EHRLICH, J., concur.